# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MICHAEL REITERMAN,

    Plaintiff,

v.                                                                  Case No. 8:19-cv-02282-02AAS

FARAH ALI ABID,

    Defendant.

_____/

## **ORDER**

       This matter came before the Court on the Defendant Farah Abid's motion to compel arbitration. Dkt. 28. The issue is well-briefed. *See id.*; Dkts. 32, 35, 40. The Court held an evidentiary hearing on the matter at which the Plaintiff Michael Reiterman's affiant, his lawyer Krista Baughman, and Defendant Abid (now a law student) testified. After this hearing, and based upon clear credibility findings apparent there and discussed below, the Court denies the motion to compel arbitration, as the parties mutually repudiated the settlement agreement that arbitration was an integral part of.

## **Discussion**

       This matter arose due to an aggressive, anonymous, and quite pervasive cyber-defamation campaign against Plaintiff Reiterman. The campaign was remarkably extensive and forceful, in effect seeking to destroy Reiterman by

painting him in the most graphic terms as a racist and serial rapist. The matter first arose out of a brief personal relationship between Reiterman and Abid. Over a year after this relationship concluded, Abid reported Reiterman to local police and prosecutive authorities for sexual assault. These two offices investigated, and closed their file with no action. Thereafter, the cyber campaign began.

The Court need not here outline all the chapters and verses of this cyber campaign. Suffice it to say, it was directed to destroy Reiterman's tenure at law school, budding career, and life. It was multi-faceted, intricate and extensive, sly, anonymous, and horrible. Reiterman's counsel has filed persuasive evidence that the cyber campaign is tied to Ms. Abid.

Reiterman first filed suit in 2018 against Abid in this District to stop the cyber campaign. *Reiterman v. Abid*, No. 8:18-cv-812-T-36AEP (M.D. Fla.). The parties settled the case via a written settlement dated June, 2018, which agreement is filed at Dkt. 1-1; Dkt. 6 (sealed). The settlement contained mutual non-disparagement clauses. The settlement also had a paragraph entitled "Takedown of Websites and Social Media" which made clear that Reiterman intended to use the settlement to end the cyber defamation campaign, and the settlement obliged Abid to review and assent to the same effort. *Id.* ¶ 3. The Settlement had a "covenant not to sue" in which the parties represented that they had not filed any other, prior lawsuits naming each other. *Id.* ¶ 9.

Most relevant, the settlement contained a provision that, with one exception not relevant here, "[a]ny controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled by arbitration administered by the American Arbitration Association with a three arbitrator panel in accordance with the American Arbitration Association's Commercial Arbitration Rules and judgment on the award, including any injunctive relief, rendered by the arbitrator may be entered in any court having jurisdiction thereof." *Id.* ¶ 20.

The credible evidence[1] is that Mr. Reiterman reasonably and objectively believed about one month after signing the Middle District settlement agreement Ms. Abid created an account on the Word Press web site registered as "the neuromancersdreams."[2] Dkt. 32-2 at 5–6. Using this account, she published items from the local police report, including some alleged affidavits that had been previously provided to Reiterman by Abid's prior counsel. Reiterman had previously (after the settlement agreement) achieved take-down of some of these documents, but the credible record evidences that on August 17, 2018 Ms. Abid or her agent republished them at michaelreitermanpolicereportassault.wordpress.com.

---

[1] Witness Baughman testified before the Court and provided this evidence directly, and by adopting the facts set forth in her earlier factual filings. *E.g.* Dkt. 32-2. The Court found Baughman to be fully credible and her oral testimony was consistent with documentary evidence set forth in this record, none of which is traversed by documents filed by Defendant.
[2] The Court makes no findings at this time as to whether Ms. Abid or her agent created the offense postings.

A second internet posting appeared post-settlement, by an account created after the settlement. A third internet posting, also after settlement, contained a copy of a previously-undisclosed state court lawsuit (filed by Ms. Abid prior to settlement). The posting stated it was a "lawsuit filed against Michael Reiterman and [his former employer] Testmasters." This state law suit was not mentioned in the "covenant not to sue" portion of the settlement agreement, although the complaint did not name Reiterman explicitly as a party.[3] This third posting also listed Reiterman's law school where he recently graduated, and listed his new law firm employer. Dkt. 32-3. These postings show that that horrific internet stalking and defamation continued after settlement.

As a result of these three postings and other information generated post-settlement, Reiterman's new counsel wrote Abid's lawyer on April 2, 2019, demanding a cessation of the disparagement and ongoing postings, and informing Ms. Abid of "her material breaches of the Parties' June 2018 Settlement Agreement, which relieves Mr. Reiterman of all further obligations thereunder and requires disgorgement of all settlement payments made by Mr. Reiterman to Ms. Abid to date." Dkt. 32-2 at 1. The letter stated that Ms. Abid's conduct exposed her to liability, "but also renders the Settlement Agreement null and void due to her

---

[3] Ms. Abid's lawyer filed a notice of dismissal of this undisclosed lawsuit immediately after the Middle District settlement. Reiterman and his counsel were unaware of this lawsuit until it was posted on the internet after the Middle District settlement.

4

fraud in the inducement, and/or excuses Mr. Reiterman from any future performance in light of her numerous material breaches." Dkt. 32-2 at 8. The letter suggests strenuous litigation will follow, and invites Ms. Abid "one final chance to make things right" and agree to substantial terms and remunerative sanctions. *Id.* at 10.

When Ms. Abid's attorney stated that she no longer represented Ms. Abid, Reiterman's counsel sent the letter to Ms. Abid directly. Ms. Abid's April 10, 2019 response is attached here as an Appendix, and can also be found at Dkt. 32-4. Ms. Abid made clear that she would not negotiate and "[s]ince Mr. Reiterman is accusing me of having breached the settlement agreement and believes he no longer has an obligation to abide by the clauses set therein, I will mirror that belief and no longer honor the clauses set forth in the agreement either." Appendix. Ms. Abid noted that she would resurrect her plans to publish a book about "this traumatic event" and planned to re-establish her "relationship with the numerous literary parties that were interested in publishing my story on a national platform." *Id.* She also noted that she "was in contact with politicians (a few of whom are now presidential contenders for the 2020 race) who were interested in my story prior to signing the settlement agreement." *Id.* She stated that she will "never recant her statements accusing Mr. Reiterman[,]" and stated that all of her witnesses are more than willing to contact and/or testify or provide what is written

in their affidavits to the bar examiners of various states where Reiterman was applying, to his law school, and to his former and present employers. *Id.*

Reiterman then filed the instant lawsuit in September 2019.[4] Dkt. 1. Ms. Abid moved to enforce the arbitration provision in the settlement and to stay or dismiss this lawsuit. Dkt. 28. The Court held an evidentiary hearing to determine whether the settlement containing the arbitration clause still exists, or was repudiated by the Parties.

As noted above, attorney Baughman, Reiterman's counsel and the drafter of the April 2 letter (Dkt. 32-2), testified. Baughman was credible. Baughman explained in her testimony, and in the documents filed with the Court, the pervasive and pernicious nature of this cyber defamation campaign; which appears by all credible evidence to be conducted or engineered by Ms. Abid.

Ms. Abid also testified and said that her email of April 10, 2019 responding to Baughman (Appendix; *also* Dkt. 32-4) did not repudiate the settlement and its arbitration clause. Ms. Abid also testified that she had nothing to do, directly or indirectly, with the cyber defamation campaign and she did not know who might have done such a thing. She stated that when she sent the April 10 email, which appears to repudiate the settlement, she was "extremely anxious and scared" and

---

[4] Ms. Abid successfully got a prior suit dismissed from California state court on personal jurisdiction grounds.

did not intend to rescind the settlement.[5] She viewed Baughman's letter as an effort to continue settlement discussions. She stated she can't comment on what she meant. She denied breaching the settlement by posting defamation online after settling the first Middle District case. She denied any secret acts such as by proxy server or anonymous web hosting. She gave testimony on both direct and cross, and the Court asked her questions. At one point she alluded to a difficulty due to English being her second language; this very bright woman speaks and understands English impeccably.

Ms. Abid's testimony at the hearing regarding the April 10 email was not credible. Having viewed the examination and participated in it, the Court makes adverse credibility findings here. The truth is the opposite of what Ms. Abid told the Court under oath. She did intend to void the settlement, just like she said in the

---

[5] A party's "subjective belief that a contract is invalid, without any outward manifestation, is insufficient to constitute a repudiation[.]" *Sun Life Assurance Co. of Canada v. Imperial Premium Fin.*, 904 F.3d 1197, 1224 (11th Cir. 2018). *See Mori v. Matsushita Elec. Corp. of Am.*, 380 So. 2d 461, 463 (Fla. 3d DCA 1980) ("Such a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute."). The test under Florida contract law is what she said, in objective terms. Her subjective view of what she meant or felt is not relevant. *Martin Energy Services v. M/V Bravante IX*, 233 F. Supp. 3d 1269, 1274–75 ("The test is of course objective, not subjective; what is required is an agreement on a set of external signals, not the same subjective understanding of those signals."); *Leopold v. Kimball Hill Hones Fla*, 842 So. 2d 133, 136 (Fla. 2d DCA 2003) ("[C]ourts look not to 'the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing.'") (quoting *Blackhawk Heating & Plumbing v. Data Lease Fin.*, 302 So. 2d 404, 407 (Fla. 1974)); *see also Pena v. Fox*, 198 So. 3d 61, 63 (Fla. 2d DCA 2015) ("Settlement agreements are governed by contract law.").

April 10 email, no more no less. Her false statements now are a stratagem to delay Reiterman's pursuit.

In defense of the arbitration clause, Ms. Abid's counsel first argues that the Parties did not intend to rescind the settlement by their acts and words. But having taken testimony from the two persons involved, and having adjudged first their written words and then their in-court testimony, the Court finds to the contrary. "[R]escission may be effected by mutual agreement of the parties[.]" *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002). Facts and evidence shows the Parties rescinded the settlement agreement no later than April 10, 2019.

Ms. Abid's counsel also argues that Baughman's April 3, 2019 letter and Ms. Abid's email response constitute inadmissible "settlement communications" under Fed. R. Evid. 408. This might be true if the Baughman letter were sought to be admissible in a trial before a jury; or if the Court employed the communications in adjudicating civil liability of either party. But here the Court is adjudicating whether the acts and the words of the parties repudiated a settlement. In so deciding, the Court may of course consider those acts and those words. Indeed, there is no other way to decide whether the parties repudiated the settlement, than by assessing what they said and did in that regard. Rule 408 does not bar

consideration of these communications for this purpose. *See*, Fed. R. Evid. 408, advisory committee notes to 1972 proposed rules.

Accordingly, the Defendant's Motion to Compel Arbitration is denied. Dkt. 28. Defendant shall file her responsive pleading no later than ten days from today's date. The parties may commence mutual discovery.

**DONE AND ORDERED** at Tampa, Florida, on March 12, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record