[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 20-11025

_____

MICHAEL REITERMAN,

                                                                            Plaintiff-Appellee,

*versus*

FARAH ALI ABID,

                                                                            Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-02282-WFJ-AAS

_____

Case 8:19-cv-02282-WFJ-AAS   Document 66   Filed 03/02/22   Page 2 of 16 PageID 430
USCA11 Case: 20-11025   Date Filed: 03/02/2022   Page: 2 of 14

2                    Opinion of the Court                 20-11025

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Farah Abid appeals under 9 U.S.C. § 16(a)(1) the District Court's interlocutory order denying her motion to compel arbitration. She argues that the parties should be required to arbitrate their dispute under the terms of a 2018 Settlement Agreement entered into between her and Michael Reiterman. Reiterman responds that the District Court correctly denied the motion to compel arbitration after finding that the parties mutually rescinded the 2018 Settlement Agreement in 2019 under Florida law. As we agree with Reiterman that the District Court was correct to consider whether the parties later rescinded their arbitration agreement, we affirm.

## I.

Abid and Reiterman first met in 2014 in Tampa, Florida.[1] At the time, Reiterman worked as an LSAT[2] teacher for the test preparation company TestMasters. Abid was one of Reiterman's students, and the two briefly dated. After the relationship ended, Abid accused Reiterman of sexual assault. This accusation resulted in an

---

[1] We make no comment on the truth or falsity of any of the background facts of this case, as the merits of Reiterman's claims are not before us on appeal. For context purposes only, we summarize the facts of the merits dispute as they have been presented by the parties to this Court on appeal.

[2] "LSAT" stands for "Law School Admission Test." It is a standardized test commonly taken by aspiring law students applying to law schools.

Case 8:19-cv-02282-WFJ-AAS   Document 66   Filed 03/02/22   Page 3 of 16 PageID 431
USCA11 Case: 20-11025   Date Filed: 03/02/2022   Page: 3 of 14

20-11025                Opinion of the Court                3

investigation by the Tampa Police Department, which ultimately declined to charge Reiterman. The Florida Attorney General's Office also declined to intervene after reviewing the case at Abid's request.

Abid then allegedly engaged in a pervasive, anonymous internet campaign to ruin Reiterman's reputation by writing several blogposts accusing Reiterman of sexually assaulting multiple women. Each of these blogposts was ostensibly written by a different woman. The District Court would later describe this campaign as "remarkably extensive and forceful, in effect seeking to destroy Reiterman by painting him in the most graphic terms as a racist and a serial rapist." These allegations severely affected Reiterman's reputation while attending Harvard Law School from 2015 to 2018 and continue to impair his ability to obtain gainful employment.

On April 4, 2018, Reiterman sued Abid in the Middle District of Florida, claiming that she had defamed him by creating all or some of the anonymous blogposts. Abid denied involvement in the internet campaign, and so Reiterman and Abid quickly entered into settlement negotiations. In June 2018, the parties agreed to the 2018 Settlement Agreement disputed in this appeal. This agreement provided, *inter alia*, that the parties would exchange mutual releases for all claims they had against each other, that Reiterman would pay Abid a set amount of money in monthly installments, and that "[a]ny controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled by arbitration."

Case 8:19-cv-02282-WFJ-AAS   Document 66   Filed 03/02/22   Page 4 of 16 PageID 432
USCA11 Case: 20-11025    Date Filed: 03/02/2022    Page: 4 of 14

4                        Opinion of the Court                    20-11025

After the parties agreed to the 2018 Settlement Agreement, Reiterman learned of evidence indicating that Abid was responsible for all or most of the blogposts, contrary to what she had stated during the settlement negotiations. Furthermore, three new blogposts were posted after the agreement was made, which Reiterman suspected Abid was responsible for. As a result, Reiterman sent a letter to Abid on April 3, 2019, through his attorney.[3] This letter stated that Abid's conduct had rendered their 2018 Settlement Agreement "null and void" and that Reiterman was therefore relieved of his obligations under the agreement. Reiterman requested that Abid return the payments Reiterman had made so far and warned Abid that litigation would follow unless she agreed to Reiterman's demands.

Abid personally responded to Reiterman's letter on April 10 by email. In her response, Abid stated that "[s]ince Mr. Reiterman is accusing me of having breached the settlement agreement and believes he no longer has an obligation to abide by the clauses set therein, I will mirror that belief and no longer honor the clauses set forth in the agreement either." Abid then went on to describe the various actions she would take now that she was released from the 2018 Settlement Agreement, such as publishing a book she claimed to have written about Reiterman's alleged sexual assault and

---

[3] Reiterman first sent this letter to the attorney who represented Abid during the 2018 settlement negotiations. After that attorney informed Reiterman that she no longer represented Abid, Reiterman sent the letter directly to Abid.

Case 8:19-cv-02282-WFJ-AAS   Document 66   Filed 03/02/22   Page 5 of 16 PageID 433
USCA11 Case: 20-11025   Date Filed: 03/02/2022   Page: 5 of 14

20-11025                Opinion of the Court                5

contacting politicians involved in the 2020 presidential race. In September 2019, Reiterman brought this action against Abid in the Middle District of Florida.

Once Abid obtained new counsel and waived service of process, she moved the District Court to issue an order compelling arbitration based on the arbitration clause in the 2018 Settlement Agreement. Reiterman opposed the motion, claiming that the parties had mutually agreed to rescind the 2018 Settlement Agreement through their April 2019 communications. The District Court ordered an evidentiary hearing on the matter, which occurred on February 24, 2020.

At the evidentiary hearing, the District Court heard testimony from both Abid and Reiterman's lawyer, Krista Baughman, who wrote Reiterman's April 2019 letter. Baughman's testimony, which the Court found credible, established that the parties intended to rescind the 2018 Settlement Agreement in their 2019 communications. While Abid testified that she did not intend to rescind the 2018 Settlement Agreement in her 2019 email, the Court found her testimony to not be credible and instead found that she had intended to rescind the agreement in her 2019 email. Following the hearing, the Court entered an order denying Abid's motion to compel arbitration as the parties had rescinded the 2018 Settlement Agreement. Abid timely appealed this order.

## II.

"We review *de novo* a district court's denial of a motion to compel arbitration." *Kroma Makeup Eu, LLC, v. Boldface Licensing & Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017). However, we review a district court's underlying findings of fact for clear error. *Multi-Fin. Sec. Corp. v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004).

## III.

### A.

A threshold question in any motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, is which issues should be decided by the trial court and which issues should be decided by an arbitrator. To answer that question, courts have identified three distinct types of challenges to motions to compel arbitration: "(1) a challenge to the validity of the arbitration clause standing alone, (2) a challenge to the validity of the contract as a whole, and (3) a challenge to the very existence of the contract." *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–45 n.1, 126 S. Ct. 1204, 1208 n.1 (2006)). Courts must decide any challenges to the existence of the contract or to the validity of the arbitration clause standing alone before compelling arbitration. *Id.* However, an arbitrator must decide any challenges to the validity of the contract as a whole should the trial court find that a contract containing a valid arbitration clause exists and that some

Case 8:19-cv-02282-WFJ-AAS Document 66 Filed 03/02/22 Page 7 of 16 PageID 435
USCA11 Case: 20-11025 Date Filed: 03/02/2022 Page: 7 of 14

20-11025        Opinion of the Court        7

or all of the claims in the lawsuit are contemplated by the arbitration clause. *Id.*

The parties' central dispute is whether a subsequent mutual rescission of a contract containing an arbitration agreement impacts the existence of the contract, in which case any questions should be decided by the court, or the validity of the contract as a whole, in which case an arbitrator should decide any questions. Abid contends that parties may only challenge the existence of a contract in court under the FAA by challenging whether the parties ever formed a contract under state law. She asserts that all other challenges to the contract as a whole speak to the contract's validity and cites in support the Supreme Court's decision in *Cardegna*, 546 U.S. at 449, 126 S. Ct. at 1210, and our decision in *Wiand*, 778 F.3d at 924–25. After careful consideration of the binding precedent, we disagree.

Abid is correct that courts must determine whether the parties formed a contract containing an arbitration clause before compelling arbitration and that this inquiry speaks to the existence of the contract. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296–97, 130 S. Ct. 2847, 2855–56 (2010); *Wiand*, 778 F.3d at 925 (holding that the appellant's challenges to the existence of the contract failed as the district court "correctly determined that a contract had been formed"). Abid is also correct that an arbitrator must decide any questions about whether a contract containing an arbitration agreement is void or voidable under state law. *Cardegna*, 546 U.S. at 448, 126 S. Ct. at 1210. But Abid's argument fails

8                    Opinion of the Court                    20-11025

when it attempts to classify a subsequent mutual rescission as just another state law ground rendering a contract void or voidable. Rather, a subsequent mutual rescission is an agreement between the parties to not be bound by their former contract any longer. As arbitration is "simply a matter of contract between the parties," the parties may of course voluntarily decide to release each other from their obligations after forming a contract, including their obligation to arbitrate certain disputes. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924 (1995); *Henderson v. Coral Springs Nissan*, 757 So. 2d 577, 578 (Fla. 4th Dist. Ct. App. 2000) (holding that "there is no enforceable arbitration clause when a contract is rescinded prior to a motion to compel arbitration" as "[t]he effect of rescission is to render the contract abrogated and of no force and effect from the beginning"). Any disputes about whether the parties later agreed to rescind their earlier contract are disputes about whether a new agreement was formed—and courts decide contract formation disputes, not arbitrators. *Granite Rock*, 561 U.S. at 296–97, 130 S. Ct. at 2855–56; *Wiand*, 778 F.3d at 925. Furthermore, compelling arbitration after the parties have agreed to rescind their arbitration agreement would deprive the parties of the benefit of their subsequent bargain and encourage gamesmanship.[4]

---

[4] If we held otherwise, a party could agree to rescind an earlier contract containing an arbitration clause, allow the other party to file suit in court based on that agreement, and then move to compel arbitration per the earlier, rescinded contract, considerably delaying the case's resolution.

Case 8:19-cv-02282-WFJ-AAS   Document 66   Filed 03/02/22   Page 9 of 16 PageID 437
USCA11 Case: 20-11025   Date Filed: 03/02/2022   Page: 9 of 14

20-11025                Opinion of the Court                9

We find our opinion in *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), instructive in this matter. In *Dasher*, we held that arbitration could not be compelled based on an earlier agreement containing an arbitration clause when a subsequent agreement without an arbitration clause entirely superseded the earlier agreement under state law. *Id.* at 1113. The key to our decision in *Dasher* was the Supreme Court's instruction to apply state law to determine whether a contract exists. *Id.* at 1116 (citing *First Options*, 514 U.S. at 943–44, 115 S. Ct. at 1924). We held that when a subsequent agreement entirely supersedes an earlier agreement, "the *existence* of a 'validly formed and enforceable arbitration agreement' is called into question." *Id.* at 1120 (quoting *Granite Rock,* 561 U.S. at 301, 130 S. Ct. at 2858) (emphasis added). While the parties in *Dasher* chose to replace their earlier agreement with a new one, the parties here chose to rescind their agreement entirely. We see no reason the two situations should be treated differently; in both cases, the existence of the earlier contract is called into doubt, not its validity. Accordingly, the matter is for the District Court to decide before compelling arbitration.

### B.

Alternatively, Abid makes several arguments against the District Court's conduct of the evidentiary hearing and its findings of fact. She argues (1) that the Court should have applied a summary judgment-like standard when deciding whether a contract exists; (2) that if a summary judgment-like standard was inappropriate, the Court instead needed to conduct a trial on the question of

Case 8:19-cv-02282-WFJ-AAS   Document 66   Filed 03/02/22   Page 10 of 16 PageID 438
USCA11 Case: 20-11025   Date Filed: 03/02/2022   Page: 10 of 14

10                        Opinion of the Court                    20-11025

the contract's existence and failed to do so; (3) that the Court allowed inadmissible hearsay at the hearing; and (4) that the Court erred when making its factual findings. We address each argument in turn.

Abid contends that district courts are required to determine whether a contract containing an arbitration clause exists using a summary judgment-like standard and so the District Court erred by failing to weigh the evidence in the light most favorable to Abid. She relies on our decision in *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016), for this assertion. In *Bazemore*, we stated that "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id.* (quoting Fed. R. Civ. P. 56(a)). *Bazemore* simply provides district courts with the option of deciding whether an arbitration agreement exists as a matter of law using a summary judgment-like standard. It does not preclude district courts from holding an evidentiary hearing to determine whether an arbitration agreement exists as a matter of fact, not as a matter of law. In fact, the FAA expressly provides that district courts may consider evidence when determining whether an arbitration agreement exists. 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue."). As the District Court here held an evidentiary hearing to

determine whether an arbitration agreement existed, it was not required to apply a summary judgment-like standard under *Bazemore*.

Abid next contends that if a summary judgment-like standard was inappropriate, then the District Court erred by failing to provide a trial; Abid never specifies whether the Court should have provided a jury or bench trial. To begin with, Abid never requested a "trial" below or otherwise objected to the use of an evidentiary hearing and so forfeited any objections she may have had to the process the Court used. *Access Now, Inc., v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). However, even on the merits her argument fails. The FAA only requires a jury trial to determine the existence of a contract containing an arbitration agreement if the party opposing arbitration requests one. 9 U.S.C. § 4. Otherwise, the issue is for the court to "hear and determine." *Id.* Reiterman (and Abid) never requested a jury trial, and so the Court did not err by not providing one. Instead, the Court held an evidentiary hearing and then made findings of fact and conclusions of law. This was, for all intents and purposes, a bench trial, and we find unpersuasive Reiterman's suggestion that the Court erred by labeling its proceeding as an evidentiary hearing.[5]

---

[5] And to the extent any error did occur, it was harmless. Were we to reverse and remand for a "bench trial" on rescission, the District Court would simply provide the parties with the same process it did here and just label it a "bench trial." This would be an enormous waste of time and judicial resources with no benefit to the parties or the public.

Abid further contends that the District Court erred by admitting hearsay as evidence during the evidentiary hearing.[6] Near the beginning of the evidentiary hearing, Baughman testified about the contents of an affidavit provided by a private investigator hired by Reiterman. This affidavit contained information indicating Abid created several of the blogposts accusing Reiterman of sexual assault. This affidavit was also attached to Reiterman's complaint as an exhibit. Abid objected to Baughman's testimony and the affidavit as hearsay, and the Court overruled her objection.

However, we need not decide whether the District Court erred by overruling Abid's objection, as any error would be harmless. Appellate courts presume that district judges "will rely only upon properly admitted and relevant evidence" during bench trials. *Tampa Bay Shipbldg. & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1216 (11th Cir. 2003). So, the "prejudicial impact of erroneously admitted evidence is thus presumed to be substantially less" in a bench trial. *United States v. Hughes*, 542 F.2d 246, 248 (5th

---

[6] Abid also objected below to the admittance of the April 2019 communications, claiming they were protected settlement negotiations under Federal Rule of Civil Procedure 408. While she briefly notes that she made this argument to the District Court in the facts section of her opening brief, she does not renew this argument on appeal, instead opting to focus exclusively on her hearsay argument. Accordingly, she abandons her Rule 408 argument on appeal. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (holding that parties abandon arguments that are not "plainly and prominently" raised on appeal (quoting *United States v. Willis*, 649 F.3d 1248, 1254 (11th Cir. 2011))).

Cir. 1976) (quoting *United States v. Nicholson*, 492 F.2d 124 (5th Cir. 1974)). The evidence from the private investigator concerned whether Abid created the disputed blogposts, and the Court expressly stated in its order denying arbitration that it made "no findings at this time as to whether Ms. Abid or her agent created the offensive postings." Instead, the Court stated that it relied on the testimonies of Baughman and Abid and on its credibility findings to determine whether rescission occurred. And the Court was entitled to use the evidence from the affidavit to impeach Abid's credibility. *See Macuba v. Deboer*, 193 F.3d 1316, 1323–24 (11th Cir. 1999) (noting that statements that would otherwise be hearsay may be used "solely for impeachment purposes"). Accordingly, we may safely rely on the District Court's statements and on our presumptions recognizing the ability of district courts to distinguish between proper and improper evidence to conclude that any error related to this hearsay objection was harmless.

Lastly, the District Court did not clearly err in concluding that the parties intended to mutually rescind their 2018 Settlement Agreement through their April 2019 communications. The Court based its findings of fact in large part on its credibility determinations of the two witnesses: it found Baughman to be credible and Abid to not be credible. Federal Rule of Civil Procedure 52(a) allows reviewing courts to set aside trial court findings of fact only when they are clearly erroneous. But "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for

Case 8:19-cv-02282-WFJ-AAS   Document 66   Filed 03/02/22   Page 14 of 16 PageID 442
USCA11 Case: 20-11025    Date Filed: 03/02/2022    Page: 14 of 14

14                      Opinion of the Court                    20-11025

only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S. Ct. 1504, 1512 (1985). While documents or other objective evidence may contradict a witness's testimony regardless of the trial judge's credibility findings, it can "virtually never be clear error" when multiple witnesses tell a "coherent and facially plausible story that is not contradicted by extrinsic evidence" and the trial judge credits one witness over another. *Id.* The District Court's credibility determinations are supported, not contradicted, by the objective evidence in this case, and so its findings of fact are untouchable on appeal.

## IV.

Accordingly, we affirm the District Court's interlocutory order denying Abid's motion to compel arbitration for the reasons set forth above.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 02, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-11025-GG
Case Style: Michael Reiterman v. Farah Abid
District Court Docket No: 8:19-cv-02282-WFJ-AAS

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joseph Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs