**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
Tampa Division

**MICHAEL REITERMAN,**

        Plaintiff,                              Case No.: 8:19-cv-02282

v.

**FARAH ALI ABID,**

        Defendant.

_____/

**PLAINTIFF'S MOTION FOR SUMMARY FINAL JUDGMENT**

Pursuant to Rule 56, Plaintiff Michael Reiterman files his Motion for Summary Final Judgment as to Counts I-II, IV-VII of Reiterman's Complaint against Defendant Farah Ali Abid. There are no issues of material fact and Mr. Reiterman is entitled to judgment as a matter of law. As evidentiary support, Reiterman has filed his requests for admission (which were unanswered and are deemed admitted), attached as Exhibit A, and his affidavit, attached as Exhibit B.

## I.      INTRODUCTION

Michael Reiterman scored a perfect 180 on the LSAT.  He attended Harvard Law School. He passed the New York bar exam. He was offered an associate attorney position at Skadden.  But then, he was falsely accused of rape and has been the victim of perhaps the most malicious cyberstalking by an ex-girlfriend in the history of the Internet.  He has not been able to obtain employment as an attorney. The New York bar refuses to admit him.  Skadden made their offer contingent upon the resolution of the lawsuits and admission to the New York bar.  This lawsuit seeks to remedy – to the best a civil action can – this situation.

There are seven causes of action again Abid - (1) fraudulent inducement; (2) fraudulent misrepresentation; (3) breach of contract[1]; (4) defamation *per se*; (5) defamation *per quod*; (6) tortious interference with relationships, and, (7) intentional infliction of emotional distress against. After losing at the district court level and then at the appellate level, Ms. Abid fired her lawyer an expressly indicated her intent to not participate in this litigation in any way.  Extensive requests for admission were served on her, but she never responded.  As a matter of law, they are deemed admitted.  *See Perez v. Miami-Dade County*, 297 F. 3d 1255, 1264 (11th Cir. 2002) ("If a party fails to respond [to a request for admission] within third days, then the matter is admitted.").

### A.    Undisputed Facts

As an initial matter, Abid admits that all allegations contained in Reiterman's Complaint are true. Request for Admission ("RFA") No. 176.

Reiterman and Abid dated briefly, but their relationship never involved sex since Reiterman respected Abid's representation that she was a practicing Muslim and a virgin. Dkt. 1 ¶ 14; RFA No. 136. In June 2014, their relationship ended amicably when Reiterman moved from Florida to California. Dkt. 1 ¶ 16.

On August 7, 2015, Reiterman was contacted by a detective of the Tampa Police Department who informed him that Abid reported Reiterman for assault, battery, and for sexual battery. Dkt. 1 ¶ 17. Since Reiterman and Abid never engaged in sexual intercourse and never used physical violence against Abid, which Abid now admits, Reiterman was shocked by Abid's false allegations. Dkt. 1 ¶¶ 14, 17; RFA Nos. 136, 171, 172.

---

[1] Plaintiff does not seek summary final judgment as his breach of contract action, as it is pled in the alternative to the fraudulent inducement claim. Pursuant to Docket #51, this Court denied Abid's Motion for Summary Judgment given that the parties had mutually repudiated the settlement agreement, thus mooting the breach of contract cause of action.

After several months of investigations, the Tampa Police Department made the decision not to charge Reiterman for any crimes, and stated that Abid provided inconsistent statements, lacked evidence, and that Abid's witnesses failed to corroborate her account. Dkt. 1 ¶ 18. The same conclusions were reached by the Florida State Attorney's Office. Reiterman. Dkt. 1 ¶ 18. As Abid finally admits, she was never sexually assaulted/battered by Reiterman, nor was she ever harmed by Reiterman. Dkt. 1 ¶¶ 14, 17; RFA Nos. 136, 171, 172.

**Abid begins her targeted campaign of defamation against Reiterman**

Recognizing that no law enforcement agency would prosecute her false claims against Reiterman, Abid proceeded to engage in a complex and malicious campaign of defamation against Reiterman. She began by creating several fake personas – "women" who had allegedly been victimized by Reiterman and "reporters" who had allegedly uncovered or were investigating Reiterman's alleged crimes. Dkt. 1 ¶ 21; RFA Nos. 15, 21, 53, 67, 72, 77, 70, 85, 88, 93, 102, 112, 116, 117, 122, 123, 125. Abid utilized The Onion Router ("TOR") to create these fake accounts and to hide her IP address to avoid detection. RFA Nos. 18, 24, 31, 48, 83, 99, 110. In turn, Abid began to spin a web of lies and utilized the "women" and "reporters" accounts to create the illusion that multiple independent individuals were able to confirm that Reiterman was a serial rapist and had previously sexually assaulted numerous women. RFA Nos. 20-21, 27, 33, 40-41, 45-46, 53, 76-77, 84-85, 92-93, 106-107, 115, 120, 126, 129-130. Abid now admits that she had no reason to believe that Reiterman had sexually assaulted anyone. RFA No. 175.

**The first defamatory *Reddit* post**

One of the fake personas that Abid created utilizing TOR was a Reddit user named "KimNghiem." RFA Nos. 111, 113. Abid admits that she created the account utilizing TOR to hide her identity from Reiterman, that KimNghiem is not a real person, and that she used the

KimNghiem account to posts a fictional account entitled "Is it My Fault My Teacher Raped Me." ("Reddit Defamation No. 1"). RFA Nos. 112-116. In Reddit Defamation No. 1, Abid falsely represented that KimNghiem had been raped by Reiterman, and that Reiterman had beat KimNghiem to near death. RFA Nos. 112-116. Abid littered her posts with Reiterman's name and included specific references that he was a student at Harvard Law School. *Id.* Abid admits that she was fully aware that KimNghiem's account of how she was raped and beaten by Reiterman was false, and that she had created the fictional account. RFA No. 115.

**The second defamatory Reddit post**

Abid also utilized TOR to hide her IP address and identity and created another fake account on Reddit called "lawguyburner." RFA Nos. 117-122. Unlike KimNghiem, lawguyburner was designed to be a "reporter" account. In turn, Abid utilized the lawguyburner account to publish a Reddit post which represented that he was a student at a top law school, and he had allegedly discovered concerning photographs of mutilated women in his male friend's drawer. Dkt. 1 ¶ 23-24. As Abid admits, she was the sole owner of the lawguyburner account and utilized that account to make false statements about Reiterman. RFA Nos. 117-122.

**The first defamatory website**

Abid did not stop her attempts to defame Reiterman with just these accounts. Instead, Abid utilized TOR to create an account called "truthleaker" on Wordpress.com, and created a Twitter account called "SirCapoHiller" on Twitter. RFA Nos. 15-16, 123-124. Abid drafted and published a publication entitled, I Identified a Serial Rapist and Nobody Cared" ("Website Defamation No. 1"). RFA No. 26.

In Website Defamation No. 1, Abid falsely represented herself that she was a "staffer on Capitol Hill," that she had received correspondence from Abid regarding her sexual assault, and

that through an investigation, she was able to ascertain that Reiterman had raped Abid and was a serial rapist. RFA No. 27, 33-42; In order to persuade readers and to support her false allegations against Reiterman, Abid represented that truthleaker had miraculously found lawguyburner's reddit post, and that she worked with lawguyburner to confirm that Reiterman possessed pictures of women that Reiterman allegedly assaulted. RFA No. 27. As Abid admits, both of these accounts were solely owned and operated by her, and at the time of the publication of these posts, she was fully aware that Reiterman had never harmed her, sexually assaulted her, and that she had no reason to believe that Reiterman had harmed or sexually assaulted any other woman. RFA Nos. 15-16, 123-124, 171-172, 175.

Moreover, Abid, through truthleaker, represented that KimNghiem (another account which Abid solely owned and controlled) had posted a "nearly identical rape story" then the one that truthleaker allegedly received from Abid. RFA Nos. 27, 38; Truthleaker represented in the Website Defamation No. 1, that she had contacted KimNghiem, verified that Reiterman was the individual who allegedly raped KimNghiem. RFA No. 27. In reality, none of this happened, as these were all fake accounts under Abid's control. RFA Nos. 15, 42, 67, 69, 72, 159, 161, 176.As Abid admits, truthleaker's representations that Reiterman was a rapist and/or a serial rapist were false. RFA Nos. 133, 171, 172, 175-176.

Abid continued to broadly disseminate truthleaker's defamatory statements through SirCapoHiller, the alleged Twitter account for truthleaker, and tweeted Website Defamation No. 1 repeatedly, including to Barack Obama, TestMasters (the company where Reiterman had worked briefly), to Harvard Law, and other tagged individuals. RFA Nos. 128-133. Abid admits that she utilized the SirCapoHiller account to knowingly retweet false blog posts about Reiterman, and that

she had also used the account to post false statements that Reiterman had "brutally assaulted" one of his young female students. RFA Nos. 126-133,

In October 2017, Abid used an anonymous Hotmail address to send a link of Website Defamation No. 1 to various Harvard Law School professors, and also called repeatedly to Harvard Law School's Title IX office to "report" Website Defamation No. 1, and to inquire about Reiterman's enrollment status. Dkt. 1 ¶ 132; RFA Nos. 141-145.

**The second defamatory website**

In November 2017, Abid utilized TOR to create "myharvardrapist" another fake persona on Wordpress. RFA Nos. 72-73. Abid published a post entitled "My Harvard Rapist, Michael Reiterman." ("Website Defamation No. 2"). RFA Nos. 76. In this post, Abid falsely represented that myharvardrapist's name was "Rasheeda," another young female student in Reiterman's LSAT class, who had been "beaten, choked, bitten, raped, scratched, and sodomized by Michael Reiterman" and posted a headshot photograph of Reiterman. Dkt. 1 ¶ 34. Again, Abid admits that she was aware, prior to the publication of Website Defamation No. 2, that it contained false statements concerning Reiterman and that she had no reason to believe that Reiterman had sexually assaulted or harmed anyone. RFA Nos. 77, 171, 172, 175-176.

**The third defamatory website**

In December 2018, Abid sent a letter addressed to the Dean of Harvard Law School purporting to be Thanh Huong Nghiem, the sister of KimNghiem, and made the same allegations that Reiterman had sexually assaulted and beaten KimNghiem. RFA Nos. 56-58, 66-71; Dkt. 1 ¶ 35. As Abid admits, Thanh Huong Nghiem was not a real person, the letter lied about Reiterman sexually assaulting and beating KimNghiem, and that Abid sent this letter to disparage Reiterman and to have Reiterman expelled from Harvard Law School. *Id.*

Roughly a week later, Abid utilized the truthleaker account to publish the letter that she sent to the Dean of Harvard Law School and entitled the post "A letter from a rape victims sister to the rapists school." ("Website Defamation No. 3"). RFA Nos. 33, 34. In Website Defamation No. 3, Abid also attached doctored text messages to make it appear that Reiterman was guilty of sexually assaulting and beating KimNghiem. RFA Nos. 63-65. Abid admits that Website Defamation No. 3 was a fictional account containing false statements about Reiterman, that she created it to disparage Reiterman, and intended to harm Reiterman. RFA Nos. 54, 55. After publishing Website Defamation No. 3, Abid sent a copy of it to the C.E.O. of the National Council of Bar Examiners (to impede Reiterman's admission to the Bar). RFA Nos. 59-62.

**Abid further defames Reiterman**

On February 14, 2018, Abid sent a letter to Marcia Sells, the Associate Dean of Harvard Law School. RFA Nos. 146-148; Decl. R., Exh. A.  In this letter, Abid explicitly accused Reiterman of "viciously beating [her] and attempted to savagely sexually assault [her]." Decl. R., Exh. A. Abid also stated that she was not Reiterman's first victim, nor would she be her last. Decl. R., Exh. A. Abid closed the letter by asking Harvard Law School to refuse to grant a diploma to Reiterman. Decl. R., Exh. A. As Abid admits, none of her accusations against Reiterman in this letter were truthful, that Reiterman had not sexually assaulted her, had not caused Abid physical harm at any time, and that she intentionally sent a letter to Dean Sells while knowing that they contained false allegations about Reiterman. RFA Nos. 146-147.

In March 2018, Abid created a fictional third-year law student at Harvard Law School and created an account called "harvardlawstudent123456789@gmail.com. Abid proceeded to use that e-mail account to send numerous e-mails to Reiterman's friends, peers at his law school, and to administrators of the law school. RFA Nos. 149-154. In these e-mails, Abid represented that she

did not feel safe to attend class in light of the brutal rape allegations alleged against Reiterman, and urged the recipients to search for Reiterman's name on Google (to increase traffic to Abid's false and defamatory posts).  *Id.*; Dkt. 1 ¶ 38, 45.

A month later, Abid created a petition on Change.org entitled "Expel Afghan Girl's Rapist from Harvard Law." RFA Nos. 155-158. In this petition, Abid masqueraded as another fictional character, "Khaista Hassan" and invented a fictional victim name "Zoufishan Zhi." RFA Nos. 159-162. Abid caused this petition to be published to students of Harvard Law School, and admits that she created the petition and that Khaista Hassan and Zoufishan Zhi were fictional characters that she had created. *Id.* Abid's actions resulted in a number of Harvard Law students to petition that Reiterman be expelled. RFA Nos. 45-46.

**Reiterman's and Abid's Settlement Agreement**

Reiterman sued Abid based on his belief that Abid was behind the defamatory publications. Dkt. 1 ¶ 50. Abid made material representations that she was not responsible for any of the defamatory posts, which she now admits was a lie. RFA Nos. 3-10. As such, Reiterman settled his case against Abid, based on her representation that she was not responsible for any of the defamatory publications, for a guarantee that she would not disparage him moving forward. RFA Nos. 3-14. Reiterman paid Abid a settlement amount of 15,000. Decl. R., ¶ 5.

**Abid continues to defame Reiterman**

Ignoring the provisions of the settlement agreement, after its execution, Abid published a post entitled "Michael Reiterman Citizen Mail." Dkt. 1 ¶ 39; RFA Nos. 80-87. This post alleged that Michael Reiterman had raped and abused a Muslim Afghan woman, and accused members of Tampa Police Department of lying and discrimination. Dkt. 1 ¶ 39. Abid admits that she created

this account, knowingly breached the settlement agreement, and knowingly published defamatory statements concerning Reiterman. RFA Nos. 11-15.

After the execution of the Settlement Agreement, Abid posted two additional blogs entitled "Lawsuit Filed Against Michael Reiterman and Testmasters." RFA Nos. 92-94; Dkt. 1 ¶ 63. These posts falsely accused Reiterman of "sexual assault" and "battery." Dkt. 1 ¶ 41. Abid admits that these publications were to disparage Reiterman and there were no truth behind these allegations. RFA Nos. 92-94. Most importantly, however, were the references to Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), and as Abid admits, the references were intentional to further harm Reiterman's employment at Skadden as she knew he was going to begin his career at Skadden upon graduation. RFA Nos. 96, 100-101.

As a result of Abid's defamatory actions towards Reiterman, the New York State Bar has placed Reiterman's admission's decision on hold until he is able to demonstrate that there are no concerns about his moral character and fitness, i.e., the resolution of these actions. Decl. R. ¶ 14. Additionally, Skadden has made Reiterman's employment contingent on the removal of all of the defamatory websites, and admission to the New York State Bar. Decl. R. ¶ 14. To date, despite diligent efforts, Reiterman has not begun his employment at Skadden, though had he done so, he would be about to start his fifth year as an associate. Decl. R. ¶ 14.

## II.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); Fed. R. Civ. P. 56(a). A movant discharges its burden by demonstrating the absence of evidence to support the non-moving party's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). After a moving party discharges its burden, the

non-moving party must go beyond the pleadings, and "present affirmative evidence to show that a genuine issue of material fact exists. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993).   Abid has produced no contrary evidence of any kind.

## III.    ARGUMENT

For the reasons stated herein, Plaintiff is entitled to summary final judgment on his causes of action for fraudulent inducement, fraudulent misrepresentation, defamation *per se*, defamation *per quod*, tortious interference with relationships, and intentional infliction of emotional distress.

### A.    Fraudulent Inducement and Recission of the Settlement Agreement

Plaintiff satisfied his burden in proving that Abid fraudulently induced Plaintiff to enter into the Settlement Agreement through her fraudulent representations that she did not create or publish any of the disparaging websites about Plaintiff, and through her fraudulent representations that she was unaware of who created the disparaging websites about Plaintiff.

Under Florida law, in order to sustain a cause of action for fraudulent inducement, the plaintiff must show: (1) a false statement of material fact; (2) that the defendant knew or should have known it was false; (3) that the false statement was made to induce the plaintiff to enter into a contract; (4) that the false statement proximately caused injury to the plaintiff when acting in reliance on the misrepresentation. *Thompkins v. Lil' Joe Recs., Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007); *Premier Gaming Trailers, LLC v. Luna Diversified Enterprises, Inc.*, 304 F.Supp.3d 1270, 1288 (M.D. Fla. 2018).

Here, Abid admitted that she was aware that her representation to Reiterman that she had "no involvement in the publication, in any forum, of any disparaging statements about Reiterman" was a false statement of material fact, and was knowingly made to induce Reiterman into executing the Settlement Agreement. RFA Nos. 1-10. In fact, Abid was directly responsible for the

publication of numerous websites and social media posts which falsely accused Reiterman of sexually assaulting women and for causing physical injury to women. RFA Nos. 20-21, 33-42, 53, 57, 59, 62, 77, 85, 93, 115, 120, 125, 130, 176. Had Abid not made the false representation that she had no involvement in the publication of defamatory statements about Abid, Reiterman would not have entered into the Settlement Agreement. Decl. R. ¶ 5.

As a result of Abid's false statements of material fact, Reiterman has been damaged. Relying on Abid's false statements of material fact, Reiterman settled and paid Abid $15,000 (given that she had represented that she was an innocent party and damaged by bringing the lawsuit), and dismissed his lawsuit against Abid. Decl. R. ¶ 5. This resulted in additional damages for Reiterman given that it delayed his pursuit to have the offending websites removed, and forced Reiterman to expend significant expenses in attorneys' fees and costs to pursue further investigations and litigation. *Id.* at ¶ 6. Further, Reiterman has been damaged because the offending websites were not removed in a timely fashion, which has prevented Reiterman from obtaining his New York Bar admission and from beginning employment at Skadden. *Id.* at ¶¶ 11-12.

Given that Reiterman satisfied his burden of proving each element of his fraudulent inducement cause of action against Abid, Reiterman respectfully requests that this Court grant summary judgment as to Reiterman's cause of action for fraudulent inducement and order that the Settlement Agreement be rescinded on the grounds of fraud in the inducement, and award damages.

### B.   Fraudulent Misrepresentation

Similarly, Reiterman is entitled to judgment on his claim for fraudulent misrepresentation. Under Florida law, a plaintiff must demonstrate that: (1) there was a false statement concerning a

material fact; (2) that the representor's knowledge that the representation was false; (3) an intention that the representation induced another to act on it; and (4) consequent injury by the party acting in reliance on the representation. *Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257, 1276 (M.D. Fla. 2012); *Cohen v. Corbitt*, 135 So.3d 527 (Fla. 1st DCA 2014).

Abid falsely represented that she was not responsible for the publications of the websites and social media posts which stated that he was a rapist and/or assaulted women, and through Abid's representation that she would refrain from making any disparaging publications about Reiterman. RFA Nos. 1-14. Abid admits that she was aware that these were false statements of material fact, that she was responsible for the publication of the defamatory websites and social media posts prior to the execution of the Settlement Agreement, and that she intended to further defame Reiterman, despite the provision of the Settlement Agreement which prohibited her from doing so. *Id.* Thus, Reiterman has satisfied the first two elements of fraudulent misrepresentation.

Abid further admitted that her false statements of material fact were intentionally made to induce Reiterman to enter into a Settlement Agreement with her, to dismiss his Florida lawsuit against her, and to delay Reiterman's attempts to have the offending websites removed. RFA Nos. 1-14.

Further, Abid signed and submitted a sworn declaration in the now-dismissed California lawsuit testifying that she did not publish any websites which defamed Reiterman, that she had no information which could aid Reiterman in the removal of any defamatory material, and that she had not published any defamatory material since the execution of the Settlement Agreement. Decl. R., Exh. B. Now, Abid admits that all of these representations were false, that she had published defamatory material (both prior and post execution of the Settlement Agreement), and that she had the requisite information to remove the defamatory material as she created the fake accounts which

published the defamatory materials. RFA Nos. 1-14. These representations were designed to delay Reiterman's pursuit in having the defamatory websites and social media posts removed, and for Reiterman to act on these representations and expend unnecessary attorneys' fees and investigator costs. Decl. R. ¶ 6.

As stated previously, as a result of Abid's multiple false statements of material facts, Reiterman was injured as he paid Abid a monetary settlement ($15,000) after she falsely represented that she was not responsible for the disparaging websites. Decl. R. ¶ 5. Reiterman was further injured because he dismissed his lawsuits against her, and was forced to hire additional investigators and attorneys, only to find out that Abid had lied under the penalty of perjury. Decl. R. ¶¶ 5-6. Moreover, Reiterman's admission to the New York Bar has been delayed because of Abid's misrepresentations and defamatory posts. Decl. R. ¶¶ 11-12. This has consequently resulted in Reiterman being unable to begin employment at Skadden or engage in any legal practice in the state of New York. *Id.*

### C.   Defamation *Per Se*

Abid defamed Reiterman. Under Florida law, in order to satisfy his burden of proving a claim for defamation *per se*, Reiterman must demonstrate that there was (1) a publication; (2) falsity; (3) Abid acted negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021). A false statement which suggests that someone has committed a dishonest or illegal act, is sufficient to establish a defamation *per se* claim. *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541–42 (M.D. Fla. 1993). Unlike defamation *per quod*, a defamation *per se* cause of action does not require any additional explanation in order to prove that the statement was defamatory. *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259 (S.D. Fla. 2021).

13

Here, Abid's many statements are defamation *per se*. Abid admitted to publishing multiple websites and social media posts which falsely asserted that Reiterman had sexually assaulted Abid, that Reiterman had beaten Abid, and that Reiterman performed similar heinous acts on several women. Dkt. 1. ¶¶ 21-41. These false publications are clearly defamatory *per se* as they explicitly state that Reiterman had committed illegal acts. Abid was well aware that these claims were false, admits that she was never sexually assaulted by Reiterman, and had no legitimate reason to believe that Reiterman had sexually assaulted or raped anyone. RFA Nos. 136, 171-172, 175.

Abid did not stop at the creation of the false websites and social media posts. Abid sent copies of the defamatory websites, social media posts, and defamatory letters to Dean of Harvard Law School, students at Harvard Law School, to other faculty members at Harvard Law School, and to the National Council of Bar Examiners. RFA Nos. 131, 132, 135, 137, 138, 142, 146, 148, 151-156.  All of these defamatory writings falsely asserted that Reiterman had sexually assaulted, beaten, and/or raped women. Dkt. 1. ¶¶ 21-41.

As a result of Abid's actions, Reiterman has been damaged. Harvard University opened numerous investigations into him, Reiterman suffered a loss of reputation as other students petitioned to have him expelled (which is significant given that the students would be his future colleagues in the legal practice), his admission to the New York Bar has been delayed, and he has been unable to begin his career at Skadden until the allegations by Abid are dropped or proven false. Decl. R. ¶¶ 7, 8, 9, 11-12.

Reiterman is entitled to summary judgment on his claim for defamation *per se*. Additionally Reiterman requests that this Court state in its judgment that any statements which state and/or accuse Reiterman of sexually assaulting or physically harmed Abid are false and defamatory.

### D.     Defamation *Per Quod*

In the alternative, if this Court does not find that Abid's websites, social media posts, and letters constitute defamation *per se*, then her writings would be considered defamation *per quod*. While the same elements of defamation apply, in a defamation *per quod* action, a plaintiff is required to provide an additional explanation or interpretation of the statements at issue to demonstrate that they are defamatory or that plaintiff is the subject of the statement. *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259 (S.D. Fla. 2021).

Here, Abid's statements that Reiterman had "brutally assaulted" Abid and had "beaten, choked, bitten, raped, scratched, and sodomized" Rasheeda, the character that Abid created, was a "psychotic sadist," and that Reiterman had committed "sexual assault" and "battery" were clearly directed to Reiterman. Dkt. 1 ¶ 37. Abid admits she knew these allegations were false as the time of publication. RFA Nos. 20-21, 27, 33, 40-41, 45-46, 53, 76-77, 84-85, 92-93, 106-107, 115, 120, 126, 129-130.

As a result of Abid's actions, Reiterman has been damaged. Harvard University opened numerous investigations into him, Reiterman suffered a loss of reputation as other students petitioned to have him expelled (which is significant given that the students would be his future colleagues in the legal practice), his admission to the New York Bar has been delayed, and he has been unable to begin his career at Skadden until the allegations by Abid are dropped or proven false. Decl. R. ¶¶ 7, 8, 9, 11-12.

Reiterman is entitled to summary final judgment for defamation *per quod*.

### E.     Tortious Interference with Relationships

Abid tortiously (and frankly maliciously) interfered with Reiterman's relationships. The elements of a tortious interference with relationships claim are: (1) existence of a business

relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; (4) damage to the plaintiff as a result of the breach of the relationship. *Ingenuity, Inc. v. Linshell Innovations Ltd.*, 2014 WL 1230695 (M.D. Fl. 2014).

Here, there was a business relationship between Reiterman and Skadden, as Skadden made an employment offer to Reiterman while he was in his third year of law school. Decl. R. ¶¶ 11-12. Abid was aware of this relationship and intentionally mentioned Skadden in one of the defamatory websites that she caused to be published. RFA Nos. 100-101.

Abid's defamation of Reiterman to Harvard Law School and its students, to the National Council of Bar Examiners, and her public websites and social media posts was an intentional and unjustified interference with the relationship by Abid, as her actions resulted in Skadden opening an investigation into Reiterman, and changing his employment offer to be contingent on Reiterman's ability to have the offending websites removed, as well as admission to the New York Bar. Decl. R. ¶¶ 11-12. Further, in an attempt to further interfere with Reiterman's future employment, Abid sent a defamatory letter, which falsely asserted that Reiterman had sexually assaulted a character created by Abid, to the National Council of Bar Examiners in order to prevent Reiterman from being admitted. RFA Nos. 59-62.

As a result of Abid's actions, Reiterman has been damaged since his employment offer at Skadden is contingent upon the successful removal of the defamatory websites, and Reiterman's admission to the New York State Bar. Decl. R. ¶¶ 11-12.  Given Abid's actions, the New York State Bar has continued to delay Reiterman's admission until the allegations against Reiterman have been resolved. Decl. R. ¶¶ 11-12. As stated in a recent letter from October 5, 2022, it is the

New York State Bar Office's policy to "defer consideration of an application for admission until such time as said civil matter is resolved."  Decl. R. ¶¶ 11-12.

Reiterman is entitled to summary final judgment on his tortious interference claim.

### F.     Intentional Infliction of Emotional Distress

Finally, this Court should enter summary final judgment on Reiterman's claim for intentional infliction of emotional distress. There are four elements: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and is regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; (4) emotional distress was severe. *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993).

Abid's campaign of defamation was deliberate and complex. She utilized TOR to hide her identity in order to frustrate any attempts to discover who had posted the defamatory websites and social media posts. RFA Nos. 18, 24, 31, 48, 83, 99, 110. Abid attempted to create a complex false story, with fake "witnesses" and "investigators" in order to falsely portray Reiterman as having committed multiple felonies. RFA Nos. 15, 21, 53, 67, 72, 77, 70, 85, 88, 93, 102, 112, 116, 117, 122, 123, 125.  As Abid now admits, she never had sexual intercourse with Reiterman, had no reason to believe that Reiterman had sexually assaulted anyone, and that she was fully aware that her statements regarding Reiterman were false. RFA Nos. 136, 171, 172, 175. Thus Abid's conduct was clearly outrageous and intolerable in any civilized community. It was true tradecraft.  Abid, an individual who attended Brooklyn Law School, was well aware of the legal and ethical standards that an attorney is held to, elected to defame Reiterman, and has elected to abandon this case after defaming Reiterman in multiple venues.

As anyone can imagine, Reiterman has suffered severe emotional distress as a result of Abid's actions. He was subjected to hatred and disdain from his fellow students at Harvard Law

School, which eventually culminated into a petition that Reiterman be expelled from Harvard Law School. Decl. R. ¶ 7.  Reiterman has remained in fear that Abid could continue to publish more malicious and harmful false accusations against him. Reiterman has also been subjected to severe emotional distress as his bar admissions have been significantly delayed and he has been unable to begin his career at one of the most respected law firms in the world. Decl. R. ¶¶ 11-12.

## IV. DAMAGES

Massive damages are warranted. The Internet is written in ink.  A promising legal career suffered what – so far – appears to be a permanent setback.  No amount of money will ever make Michael Reiterman truly whole.  Will he ever get admitted to the New York State Bar? Maybe but it's been 4 years and any legal career will be set back.  Will he be able to date and marry without a potential spouse or the spouse's family feeling uncomfortable about the allegations? Will he ever be able to run for public office or become a judge?

Reiterman respectfully requests that this Court award general, special, and punitive damages against Abid.

As to Count 1 & 2 for Fraudulent Inducement and Fraudulent Misrepresentation, Reiterman requests that the Court award damages in the amount of $118,057.69. This amount compromises of $15,000 (the amount Reiterman paid to Abid pursuant to the settlement agreement she materially breached), $80,097.50 in attorneys' fees (as Reiterman dismissed two previous lawsuits based upon Abid's false representations), and $22,960.19 (as Reiterman relied on Abid's false representations that she did not publish the defamatory websites).

As to Count 4 & 5 for defamation, Count 6 for Tortious Interference with Relationships, and Count 7 for Intentional Infliction for Emotional Distress, Reiterman requests that the Court award damages in the amount of $8,231,800. This compromises of $2,144,500 in back pay and

future pay, $87,300 for past and future medical expenses, $500,000 in emotional distress damages, $500,000 in reputational damages, and $5,000,000 in punitive damages.

### A.    Lost Wages

This Court should award special damages, specifically for backpay and future pay to Reiterman given that Abid's fraud, defamation, and tortious interference with relationships resulted in significant delays in Reiterman's admission to the New York State Bar (to date, the New York State Bar refuses to contemplate admission to Reiterman because of Abid's allegations), and has resulted in Reiterman being unable to begin his employment at Skadden. Decl. R. ¶¶ 11-12. Had Abid not fraudulently induced Reiterman to enter into the Settlement Agreement, had she not defamed him, and had she not interfered with Reiterman's ability to be admitted to the New York State Bar and his employment Skadden, Reiterman would have begun his legal career in 2019. However, as a result of Abid's actions, Reiterman has been prevented for four years in his attempt to formally join the legal profession.

Pursuant to Skadden's offer and publicly available sources and press releases, Reiterman would have made $205,000 in his first year of employment in 2019, $255,000 in 2020, $329,500 in 2021, and $370,000 in the current year. Additionally, if Reiterman remained at Skadden for 2023, he would have made approximately $435,000, and $475,000 in 2024. Decl. R. ¶¶ 13.

This does not account for fringe benefits that Reiterman would have been entitled to at Skadden, such as health insurance, life insurance, and a 401(k). Reiterman estimates this amount to roughly account for $15,000 a year. Decl. R. ¶¶ 13.

Accordingly, Reiterman respectfully requests that this Court award him his lost wages and benefits from 2019-2022, as well as future wages and benefits for 2023 and 2024, for a total of $2,144,500.

### B.     Past and Future Medical Damages

This Court should award Reiterman damages for his past and future medical expenses. To date, Reiterman has incurred $15,300 in medical costs for the emotional distress that has arisen as a result of Abid's actions. Decl. R. ¶ 10. Looking forward, it is estimated that Reiterman's medical costs to treat the emotional distress that arose out of Abid's actions will be $18,000 per year. *Id.* Accordingly, Reiterman requests that this Court award medical past and future medical damages in the amount of $87,300, to account for the medical expenses that Reiterman has already paid, and for four years of medical costs to treat Reiterman's emotional distress.

### C.     Emotional Distress

This Court should also award compensatory damages to Reiterman for the emotional distress that he has suffered as a result of Abid's malicious actions.

To date, four years after the first defamatory publication was published, Reiterman's life remains in chaos due to Abid's malicious actions. Decl. R. ¶ 10. He has been unable to begin his career in the legal profession and/or any other profession, he has been unable to establish key relationships, and was forced to move across the country while expending his funds and savings to pursue justice for the defamatory actions of Abid. Decl. R. ¶ 10. Understandably, the strain of dealing with these defamatory publications has caused him severe emotional distress, including the strain and stress this situation has placed on his family and Reiterman's relationship with his family. Decl. R. ¶ 10.

Abid caused her defamatory publications to be sent to students and faculty of Harvard Law School, and the Internet. RFA Nos. 15, 21, 53, 67, 72, 77, 70, 85, 88, 93, 102, 112, 116, 117, 122, 123, 125. Given the intricate web of lies that Abid created, students were prone to believe that Reiterman was guilty of Abid's false claims, and Reiterman was subject to humiliation and

ridicule. In fact, students even began a petition to have Reiterman expelled. Reiterman was subject to multiple investigations from the school and from Skadden, which only created additional emotional distress as he had to balance his schoolwork and the need to clear his name from Abid's false accusations. Decl. R. ¶ 7.

Reiterman respectfully requests that this Court award him $500,000 for the emotional distress he suffered from as a result of Abid's malicious actions.

### D.      Harm to Professional Reputation

This Court should award damages because Reiterman's reputation and standing in the community, both at Harvard Law School and in the legal industry, have been affected as a result of Abid's defamation, and tortious interference with relationships. While at Harvard Law School, Reiterman was subject to numerous investigations by the school and Skadden. Decl. R. ¶ 7. Abid's defamatory publications and her attempts to disseminate them to students and faculty at Harvard Law School resulted in Reiterman from being shunned by his peers, and even amounted to students demanding that Reiterman be expelled since they believed Abid's defamation of Reiterman. Decl. R. ¶ 7. Unfortunately, in the modern day and age, it has become nearly impossible to erase Abid's defamatory posts completely.

Accordingly, Reiterman respectfully requests that this Court award him $500,000 to compensate him for the harm to his professional reputation.

### E.      Attorneys' Fees and Costs

This Court should award all of Reiterman's attorneys' fees and costs in the current action as part of the compensatory damages. In order to fraudulently induce Reiterman to enter into the Settlement Agreement, Abid falsely represented that she was not responsible for the publication of the defamatory websites and social media posts regarding Reiterman. RFA Nos. 1-14. Had she

not made such a representation, Reiterman would not have been forced to file and prosecute this action. To date, Reiterman has incurred $80,097.50 in attorneys' fees, and $22,960.19 in costs. Decl. R. ¶ 6. Additionally, Reiterman should be awarded $15,000 to provide restitution to him for the amount paid pursuant to the Settlement Agreement, given that Abid materially breached the contract, and subsequently unilaterally rescinded it. Decl. R. ¶ 5.

### F.    Punitive Damages

This Court should award punitive damages for Reiterman. The purpose of punitive damages is not to compensate Reiterman, but to punish Abid and to deter others from engaging in similar conduct. *Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1266 (N.D. Fla. 2007). Punitive damages are designed to punish conduct that is "malicious, wanton, outrageous, and of moral turpitude." *Id.*

Under Florida law, in a defamation action, there must be "ill will, hostility, or an evil intention to defame and injure." *Id.* at 1267. This is clearly present here. Abid had an evil intention to defame and injure Reiterman, by disseminating the defamatory publications in order to ruin Reiterman's reputation among his peers and faculty at Harvard Law School, by attempting to have Reiterman expelled from Harvard Law School, by actively attempting to prevent Reiterman from being admitted to any state bar, and by intentionally interfering with the offer of employment Reiterman received from Skadden. Thus, punitive damages should be awarded because Abid's actions were malicious, wanton, outrageous, and of moral turpitude.

While Florida law has a statutory cap as to punitive damages, when a defendant had a specific intent to harm the plaintiff, and it is determined that defendant's conduct harmed plaintiff, then there is no cap on punitive damages. *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1216 (11th Cir. 2010); Fla. Stat. Ann. § 768.73(1)(c). Abid, a graduate of Brooklyn Law School, has

already demonstrated her willingness to defame Reiterman in violation of the law, and materially breached the settlement agreement she entered into with Reiterman. Thus, it is clear that a large punitive award is warranted to punish Abid and to deter her, and others from engaging in similar conduct. Reiterman respectfully requests that this Court order punitive damages in the amount of $5,000,000 against Abid.

## V.   ADDITIONAL REQUESTS FOR RELIEF

Reiterman respectfully requests that that this Court reserve jurisdiction after the issuance of a judgment for judgment enforcement purposes and if Reiterman needs to file additional motions to have other defamatory websites removed.

Additionally, in order to authenticate Reiterman's Requests for Admissions, Reiterman has attached his First Set of Requests for Admissions, as Exhibit A. Given that the First Set of Requests for Admissions contain true and correct copies of the defamatory websites, prior to their removal, Reiterman respectfully requests that this Court seal all exhibits of the First Set of Requests for Admissions If the defamatory websites were allowed to remain on the public docket, this would essentially moot Reiterman's attempts on having them removed from the Internet, and thus cause him further harm. Reiterman respectfully requests that Exhibit A of his affidavit be sealed as well because it contains defamatory statements about him.

## VI.      CONCLUSION

For the foregoing reasons, Reiterman respectfully requests that the Court grant his Motion for Summary Final Judgment as to all of his causes of action against Abid.

Respectfully submitted,

 /s/ Matthew Sarelson
Matthew Sarelson, Esq.
Florida Bar 888281
**DHILLON LAW GROUP INC.**

23

Attorney for Plaintiff Michael Reiterman
3801 PGA Blvd., Suite 600
Palm Beach Gardens, Florida 33418
305.773.1952
msarelson@dhillonlaw.com